UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FIREARMS EXCHANGE, LLC,

      Plaintiff,

v.                                   Case No. 08-14408
                                        Honorable Patrick J. Duggan

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES

      Defendant.
_____/

## OPINION AND ORDER GRANTING DEFNDANT'S
## MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on May 27, 2009.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
                  U.S. DISTRICT COURT JUDGE

Firearms Exchange, LLC ("Plaintiff") filed this petition for judicial review of the

Bureau of Alcohol, Tobacco, Firearms and Explosives' ("ATF") revocation of its Federal

Firearms License ("FFL").  The ATF revoked Plaintiff's FFL based on its finding that

Plaintiff willfully violated the Gun Control Act of 1968 ("GCA"), 18 U.S.C. §§ 921-928.

Plaintiff contends that it did not commit some of the alleged violations of the GCA and

that any actual violations were not done "willfully."

Presently before the Court is the ATF's motion for summary judgment pursuant to

Federal Rules of Civil Procedure 56(c), filed April 15, 2009.  Plaintiff filed an untimely

response to the motion on May 22, 2009.  Prior to that date, on May13, 2009, the Court

issued a notice to inform the parties that it is dispensing with oral argument with respect

to the ATF's motion in accordance with Eastern District of Michigan Local Rule

7.1(e)(2). The Court continues to believe that oral argument will not aid in its resolution

of the motion.

## I.       Factual and Procedural Background

On November 8, 2005, the ATF issued Plaintiff a FFL as a dealer in firearms other

than destructive devices in accordance with the GCA. (Compl. ¶ 8.) From January 21,

2004 until November 8, 2005, Wah Wong ("Wong"), Plaintiff's sole owner, held an FFL

in his own name, as a dealer in firearms other than destructive devices. (*Id*.) When

Wong applied for his FFL in 2003, ATF personnel conducted an inspection and reviewed

with him the controlling regulations and requirements for an FFL. (A.R. at 52-60, 282-

84, 356, 380.)

On August 23, 2005, ATF investigators conducted a compliance inspection

respecting Wong's FFL. (A.R. at 93.) The inspection resulted in various citations for

violations of the GCA and its implementing regulations. (*Id*. at 93-103.) Following the

inspection, one of the investigators conducted a "closing" conference, where she

reviewed the violations and necessary corrective actions with Wong. (*Id*. at 75, 381.)

Wong was provided with a copy of the Report of Violations and was scheduled to attend

a "warning" conference with ATF personnel on November 2, 2005. (*Id*. at 91-92.) The

purpose of this conference was to discuss the reasons for the violations, review Wong's

legal obligations under the GCA, and discuss steps Wong needed to take to ensure future

2

compliance.  (*Id.*)

At the warning conference on November 2, 2005, Wong was given the opportunity to comment on the violations and the specific actions he had taken to ensure that the violations would not reoccur.  (A.R. at 109-110, 286-87, 381-82.)  Wong also participated in an application interview regarding his application for an FFL as Plaintiff's sole owner. (*Id.* at 67-68, 104-05, 287, 289.)  Wong completed the new application after being cited for violating 27 C.F.R. § 478.51, which requires a federal firearm licensee to notify ATF of any change in ownership.[1]  (*Id.* at 83.)  The new license was issued on November 8, 2005.  (*Id.* at 106.)  ATF thereafter sent a letter to Wong summarizing the discussions that occurred at the warning conference and reminding him that "future violations, repeat or otherwise, could be viewed as willful and may result in the revocation of your license. You may anticipate further inspections to ensure your compliance."  (*Id.* at 109-110, 382-83.)

Thereafter, from February 5-8, 2007, ATF investigators conducted a compliance inspection on Plaintiff's premises.  (A.R. at 11.)  That inspection resulted in a number of citations for violations of the GCA and implementing regulations, each of which was a repeat of the violations for which Wong was cited in 2005.  (*Id.* at 113-41.)  Following the inspection, one of the investigators conducted a closing conference with Wong and his

---

[1]On March 18, 2004, Wong had submitted articles of organization for Firearms Exchange LLC to the Michigan Department of Consumer and Industry Services.  (A.R. at 68.)

3

wife, Tammy Wong.  (*Id*. at 120.)  On January 11, 2008, ATF issued a Notice of

Revocation of License to Plaintiff, stating that in light of the results of the February 2007

inspection, it had reason to believe that WONG, d/b/a Plaintiff, had willfully violated

provisions of the GCA.  (*Id*. at 30-33.)  ATF informed Plaintiff that it could request a

review hearing regarding the revocation.  (*Id*. at 30.)

Plaintiff requested a review hearing and a hearing was conducted on June 10,

2008.  (A.R. at 268-400.)  In a memorandum dated July 8, 2008, the hearing officer

indicated her agreement with the investigators' findings on all but two issues.  (*Id*. at 25-

26.)  The hearing officer also concluded that the violations were committed willfully and

recommended that Plaintiff's license be revoked.  (*Id*. at 27.)  Based on the hearing

officer's recommendation, ATF's Director of Industry Operations issued a Final Notice of

Revocation of Plaintiff's FFL on August, 19, 2008, which was effective October 23,

2008.[2]  (*Id*. at 7-16.)  The Final Notice of Revocation identifies the following grounds for

the revocation:

> <u>Ground One</u>: Firearm Exchange willfully failed in two
> instances to report the multiple sale of handguns to ATF on
> Forms 3310.4 (Report of Multiple Handgun Sales) the sale or
> disposition of two or more pistols or revolvers (or any
> combination of pistols or revolvers totaling two or more) to
> non-licensees at one time or during any five consecutive
> business days in violation [of] 18 U.S.C. § 923(g)(3)(A) and
> 27 C.F.R. § 478.126a. . . .

---

[2]At Plaintiff's request, ATF postponed the effective date to ten days after the Court
issues a final order resolving the petition for review.

4

Ground Two: Firearm Exchange willfully failed to enter complete and correct information in it's A&D book relating to the acquisition and/or disposition of firearms in violation of 18 U.S.C. § 922(m) and 923(g)(1)(A) and 27 C.F.R. § 478.125(e). . . .

Ground Three: Firearm Exchange willfully transferred a firearm to a person the Licensee knew or had reasonable cause to believe was a person prohibited from receiving firearms in violation of 18 U.S.C. § 922(d)(9) and 27 C.F.R. § 478.99(c)(9). . . .

Ground Four: Firearm Exchange willfully failed in 38 instances to obtain complete and correct Form 4473 (Firearms Transactions Records) in over-the-counter sales of firearms to non-licensees in violation of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.124(c). . . .

(A.R. 11-13.)

Plaintiff filed a petition for judicial review on October 16, 2008. In the petition, Plaintiff "denies *some* of the allegations made against it by [ATF]." (Doc. 1 ¶ 13 (emphasis added).) Plaintiff "denies that *any* of the alleged violations were willful." (*Id.* (emphasis added).)

## II.   Applicable Standards

### A.   Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255.

### B.    Judicial Review Under the Gun Control Act

Within sixty days after receiving notice of the agency's final decision to revoke its FFL, an aggrieved licensee may file a petition in the district court seeking de novo review of the decision. 18 U.S.C. § 923(f). In its review, the district court determines only whether the agency's decision is authorized. *See id.* § 923(f)(3). "If the court decides that the Attorney General was not authorized to . . . revoke the license, the court shall order the Attorney General to take such action as may be necessary to comply with the

6

judgment of the court."  *Id.*  In conducting its review, the district court may consider

evidence outside the administrative record where good reason exists to do so.  *Morgan v.*

*U.S. Dep't of Justice, ATF*, 473 F. Supp. 2d 756, 761-62 (E.D. Mich. 2007) (quoting

*Stein's, Inc. v. Blumenthal*, 649 F.2d 463, 466 (7th Cir. 1980)).

## III.    Applicable Law and Analysis

The GCA authorizes the Attorney General, after notice and an opportunity for

hearing, to revoke any license issued under the statute "if the holder of such license has

*willfully* violated *any* provision of this chapter or any rule or regulation prescribed by the

Attorney General under this chapter."  18 U.S.C. § 923(e) (emphasis added).  "Because

the government may revoke a license if the licensee willfully violates 'any' provision of

the GCA . . . a single willful violation of the GCA, or of its rules and regulations, suffices

to revoke a firearms license."  *Armalite, Inc. v. Lambert*, 544 F.3d 644, 647 (6th Cir.

2008) (citing *Appalachian Res. Dev. Corp. v. McCabe*, 387 F.3d 461, 464 (6th Cir.

2004)).  In *Armalite*, the Sixth Circuit Court of Appeals embraced the following

definition of "willful" for purposes of § 923(e): "A dealer 'willfully' violates the GCA

when it intentionally, knowingly or recklessly violates known legal requirements." 544

F.3d at 648.

As indicated above, in its petition for review, Plaintiff does not challenge every

violation found by the ATF.[3]  In fact, Plaintiff has never disputed ATF's finding that it

─────────────

[3]In response to ATF's motion, Plaintiff only challenges ATF's finding that it
violated 18 U.S.C. § 922(d)(9) and 27 C.F.R. § 478.99(c)(9) by transferring a firearm to a

failed to report multiple sales of handguns to ATF on Form 3310.4 (Ground One) or that it failed to obtain a properly completed ATF Form 4473 in over-the-counter sales of firearms to 38 different non-licensees (Ground Four).  (A.R. at 11, 13-14.)  Thus this Court need only decide whether any of Plaintiff's violations were "willful."  The Sixth Circuit's decision in *Armalite* guides this determination.

In *Armalite*, the court held that the ATF was authorized to revoke the dealer's license because the dealer's omissions (failure to provide information required on Form 4473 on six occasions) "amounted to reckless violations of known legal obligations or what comes to the same thing: a plain indifference to known legal obligations."  544 F.3d at 649.  The dealer admitted that it violated the requirements of the GCA, but claimed that its omissions resulted from inexperience, "processing" errors, and human error.  *Id*. at 645-46.  The court nevertheless concluded that the dealer's violations were willful, reasoning that "[a]t some point, repeated negligence becomes recklessness, and that point arrived for [the dealer] in 2005."  *Id*. at 650 (citations omitted).  The court based its conclusion on the following evidence: (1) a compliance inspection in 2004 revealed that the dealer failed to accurately and fully complete Form 4473 in 24 of 111 instances; (2) the ATF issued a Report of Violations setting forth the violations and instructions for corrective action; (3) ATF agents discussed the violations with the dealer and told it to take steps to ensure future compliance; (4) ATF warned the dealer that it would conduct a

---

person who had been convicted of a misdemeanor crime of domestic violence.

8

future inspection and that any violations could be viewed as willful and result in the revocation of the dealer's license; and (5) the same violations were discovered during a follow-up inspection in 2005 that led to the license revocation. *Id.* The record in Plaintiff's case presents identical facts.

Following their 2005 inspection, ATF investigators cited Wong for several violations including *inter alia* incompletely and incorrectly completing Form 4437 in more than 300 instances in violation of 27 C.F.R. § 478.124(c) and failing to report the multiple sale of handguns to ATF on Form 3310.4 in violation of 27 C.F.R. § 478.126a. (A.R. 93-103.) An ATF investigator reviewed the violations and necessary corrective actions with Wong and provided Wong with a copy of the Report of Violations. (A.R. at 75, 381.) Wong also attended a warning conference with ATF personnel where the violations and steps to ensure future compliance were discussed with him again. (A.R. at 91-92, 109-110, 285-86, 381-82.) At the warning conference and in a subsequent letter summarizing the conference, ATF warned Wong that "future violations, repeat or otherwise, could be viewed as willful and may result in the revocation of your license. You may anticipate further inspections to ensure your compliance." (A.R. at 109-110, 382-83.) ATF's subsequent inspection revealed repeat violations. (A.R. at 113-141.)

Like *Armalite*, the record reflects that Plaintiff was aware of its legal obligations under the GCA but repeatedly failed to comply with those obligations. In fact during the review hearing in this case, Wong (as Plaintiff's sole owner) acknowledged that he understood his legal obligations under the GCA prior to the 2007 inspection, including

9

the specific violations found during that inspection.  (A.R. at 384-85.)  Wong claimed that

the violations resulted from "mix-ups" and "oversights." (A.R. at 11-12).  As the *Armalite*

court indicated, however, "[a]t some point, repeated negligence becomes recklessness."

544 F.3d at 650.  The Court therefore finds no genuine issue of material fact with respect

to whether Plaintiff's violations were willful and concludes that they in fact were

committed wilfully.

**IV.     Conclusion**

      For the above reasons, the Court concludes that Plaintiff willfully violated one or

more provisions of the GCA or the statute's implementing regulations.  The Attorney

General therefore was authorized to revoke Plaintiff's license.

      Accordingly,

      **IT IS ORDERED**, that ATF's motion for summary judgment is **GRANTED**.


                    s/PATRICK J. DUGGAN
                    UNITED STATES DISTRICT JUDGE

Copies to:
James T. Simmons, Esq.
Caleb Simon, Esq.
AUSA Derri T. Thomas